## Scull *et al. versus* Shakespear.

1. Fisher agreed to build a vessel for Lathbury, to be paid for in instalments, the last when the vessel was finished;—Lathbury having failed, the vessel being partly constructed in the hands of Fisher, he with consent of Lathbury, agreed with Scull to build a schooner to be paid for in instalments, the last when finished; there was no contract for delivery till all was paid. *Held,* that the title to the vessel was not in Scull until payment in full.

2. Until payment Fisher was owner and the vessel was subject to a lien for lumber furnished to him for her construction.

3. On the trial of an attachment against the vessel by a material-man the jury found generally for the libellant, and also at the request of the court, added a special finding, that Fisher had no ownership when the lumber was furnished, &c. The court below entered judgment on the general finding. *Held* to be correct, the special finding being immaterial.

4. The contract to build the vessel was to be performed on land and therefore was not within the admiralty jurisdiction of the United States courts.

5. Walker *v.* Anshutz, 6 W. & S. 519, followed.

February 12th 1874. Before AGNEW, C. J., WILLIAMS, MERCUR and GORDON, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the District Court of *Philadelphia :* No. 28, to July Term 1872.

This was a libel filed January 27th 1870, by William M. Shakespear against the schooner "Maggie Cain," William Fisher and James H. Fisher, partners as William Fisher & Son, owners, and Andrew Scull, master.

The libel was filed under the Act of June 13th 1826, Pamph. L. 616, 1 Br. Purd. 94.

Sect. 1 provides that vessels of all kinds built, &c., within this Commonwealth, shall be subject to a lien for all debts contracted by the masters or owners thereof, for work or materials done or provided in building, &c., in preference to any other debt due from the owners.

Sect. 2. The lien shall continue during the time between contracting the debt, and the time when the vessel shall proceed on her voyage, next after the work done or materials furnished.

Sect. 3. The lien for work done and materials furnished, shall exist in favor of the following classes of tradesmen and mechanics, and no others, to wit: Carpenters, blacksmiths, mast-makers, boat-builders, block-makers, rope-makers, riggers, joiners, carvers, plumbers, painters, ship-chandlers, coppersmiths, brass-founders, coopers, venders of sail-cloth and lumber merchants.

The libel set out that at "sundry times" between December 1st 1868 and January 1st 1870, the libellant, at the request of William Fisher & Son, "owners or reputed owners" of the new schooner to be called the "Maggie Cain," furnished at Philadelphia for building, &c., the schooner, lumber and materials, for which there were still due $3016.12, according to a bill of particulars which was annexed to the libel; that the schooner, of which Andrew Scull

was master, was then lying at Plum street wharf on the Delaware river, in Philadelphia, and was not completely finished, and had not proceeded on a voyage since the lumber, &c., had been furnished.

On the same day the attachment was issued; the sheriff returned that he had attached the vessel, and " made known to the defendants."

Scull, "intervening for his own interest as master and part owner of schooner, and on behalf of the other owners," answered:

1. That he and thirteen others, naming them, were owners of the schooner, that no other person was an owner; the list of names did not include William Fisher & Son.

2. That the libellant between the dates stated in the libel, at the instance of Fisher & Son, had furnished ship-timber, &c., to them; but he denied that the timber was furnished to be used especially in building the schooner, but that it was furnished on the personal credit of Fisher & Son only.

3. Admitting that the schooner had not proceeded on any voyage, he averred that the hull had been built for her present owner by Fisher & Son, and before filing the libel had been launched and delivered out of the possession of Fisher & Son into the sole possession of her present owners, who had previously paid Fisher & Son $14,000 as they had contracted to do, that being the full consideration-money due them; and neither the respondent, master, and part owner, nor the other owners, had ever purchased from the libellant lumber, &c., to be used in building the schooner.

4. Not one-third of the lumber mentioned in the bill of particulars was used in building the schooner, but that the lumber was used by Fisher & Son about other vessels.

5. That if libellant had a right of lien against the schooner he had waived it, by accepting promissory notes in full settlement of his claim from Fisher & Son, except about 7000 feet of plank.

6. That the Act of June 13th 1836 is unconstitutional in attempting to confer admiralty jurisdiction upon the District Court of Philadelphia.

The respondent further averred that when the timber was furnished to Fisher & Son, they were building the schooner for Lathbury, Wickersham & Co., and for Andrew Scull and others, and that Fisher & Son had never been owners of the schooner.

A replication was filed, and the case put at issue April 9th 1870.

The building of the schooner was under a contract dated the 23d of December 1868, between Fisher & Son and Lathbury, Wickersham & Co., by which Fisher & Son agreed that they would build a three-masted schooner for Lathbury, Wickersham & Co., according to specifications set out in the

[Scull v. Shakespear.]

agreement, for $18,500 payable in instalments, as specified in the agreement.

Lathbury, Wickersham & Co. being unable to meet their payments the contract was abandoned, and in or about the month of September 1869 the contract was rescinded, and Scull and the other parties for whom he intervened, entered into a contract with Fisher & Son " to build and finish the hull of a three-masted schooner now in frame, in accordance with the specifications in the agreement, for the sum of $18,000, of which $6000 were to be paid when the contract was signed and the remainder in instalments, each upon the completion of a specified part of the vessel; $2000 of the remainder to be paid when the vessel should be finished.

The cause was tried November 21st 1871, before Lynd, J.

The plaintiff testified that the schooner was built at the yard of Fisher & Sons, in Kensington, and he furnished materials for her by directions of William Fisher; commenced in September 1868, until " we came to a stop about the middle of April;" the largest portion was furnished between December and April; he kept on furnishing until November 25th. He then testified as to the times when the timber was furnished, the quantity and the price during all the time. Fisher & Son had charge of the yard; he saw the timber which he had furnished in the schooner. Fisher told plaintiff the schooner was for Lathbury, Wickersham & Co., but plaintiff's dealings from the beginning to the end were with Fisher & Son.

Plaintiff gave other evidence of the delivery of the lumber and admissions by Fisher that the lumber in the schooner had been furnished by plaintiff.

The respondents admitted that the lumber had been ordered by Fisher & Son, but not on the credit of the schooner.

For the respondents, William Fisher testified that his firm built the schooner in the first place for Lathbury, Wickersham & Co., under a contract which was destroyed before Scull and the other subsequent contractors would enter into an agreement with the firm.

Lathbury testified that, his firm having got into difficulty in the summer of 1869 had asked Fisher " to find other owners;" having found Scull and the others to take the vessel off Lathbury, Wickersham & Co.'s hands, the contract was rescinded, and at the time " Andrew Scull and others took the vessel and made a payment, Fisher & Son did not release us until Scull and others had taken the vessel." The building of the schooner had stopped some five or six weeks; the rescission was by mutual consent; " Scull and others were to step into our shoes."

William Fisher, called again, testified that they did not finish for Lathbury, Wickersham & Co. They undertook to finish for Scull and others, who took the vessel in September 1869; and Fisher & Son then released Lathbury, Wickersham & Co. Scull

[Scull *v.* Shakespear.]

and others paid Fisher & Son $6000 at the execution of their con-
tract and the release of Lathbury, Wickersham & Co. Fisher &
Son, besides the $6000, received from Scull $7218.62 on the
schooner, which was in full to December 17th 1869, and they de-
livered the vessel on that day or the next to Scull; she had not
then been attached; she went to another yard close by Fisher &
Son's to get her masts; she did not come back to Fisher & Son's;
she was finished at another wharf; witness was broken and could
not finish her; he never purchased timber from plaintiff on.the
credit of any vessel; he did not purchase timber differently from
any other.

Other witnesses testified that Fisher & Son had no interest in
the schooner.

The sixth point of the respondent was:—

"The Act of 13th June 1836, upon which this attachment is
issued, is invalid, and your verdict must therefore be for the de-
fendants." This point was reserved.

The eighth point was:—

"I instruct you, as matter of law, that as between the builders
of a vessel and those for whom the vessel is built, the title to said
vessel can pass without delivery, where it can be designated and
ascertained, and is separated from other property." This point
was refused.

The court charged: * * *

"The question in this cause, full of nicety, is the question of
ownership. There is no doubt, under our Act of 1836, that a party
who sells material must show that the contract was made with the
master or owners of the vessel. These words have a technical
signification. The owner is the man who gets a certificate and is
registered as owner. Contracts for voyages are usually made by
the master or owners. This, the defendants contend, is the mean-
ing of the word 'owner' within the meaning of this act. As far
as the question of law is concerned, I reserve it. [Without regard
to my individual opinion I charge you that a person who contracts
to build a vessel for others, at a price stated, whether payable by
instalments or otherwise, and does build her at his own yard, is
the owner within the meaning of the Act of 13th June 1836, upon
which this proceeding is founded. Therefore, you will have no
difficulty in finding your general verdict.] I shall ask you to find
specially whether William Fisher & Son had, at the time they con-
tracted for the lumber in question, any other possession, control or
ownership of the vessel 'Maggie Cain,' than as builders of or
contractors to build her for Lathbury, Wickersham & Co., and for
Scull and others. If Lathbury, Wickersham & Co. abandoned to
Scull and others, and not to William Fisher & Son, then they were
still contractors. During the construction for Scull and others
their position cannot be doubted. The evidence under this special

[Scull *v.* Shakespear.]

finding that you are requested to make, centres in the question of abandonment. To whom did Lathbury, Wickersham & Co. abandon the vessel ? * * *

" If there was a moment or a day of time after the abandonment before Scull came in, Fisher & Son were the owners. * * * As to the general verdict, if the timber was not furnished to William Fisher & Son on their right as owners, then your verdict should be for respondent. If on the credit of the vessel, was it used in the building of the vessel ? If not, your verdict must be for the defendant. It is not contended that a great deal of this timber did not go into the vessel. It is only for the value of what did go in that you can find for the plaintiff. Go on and find your general verdict, leaving out the question of ownership, then consider separately the special finding."

The verdict was for plaintiff, for $3373.01. " The jury find no ownership by William Fisher & Son in the schooner ' Maggie Cain ' at the time the lumber was contracted for with William M. Shakespear, but we do find an ownership by them in said vessel during the interval that ensued between the abandonment of ownership by Lathbury, Wickersham & Co., and the sale to Andrew Scull and George Fisher and others."

On motion of the plaintiff, the court amended the special finding so as to read :—

" The jury find no ownership other than as builders, by William Fisher & Son in the schooner ' Maggie Cain,' at the time the lumber was contracted for with William M. Shakespear ; but we do find an ownership other than as builders by them in said vessel during the interval that ensued between the abandonment of ownership by Lathbury, Wickersham & Co., and the sale to Andrew Scull and others."

The court then entered judgment for the libellant as follows :—

" And now, March 16th 1872, it appearing to the court that the demand of the libellant has been duly found by the verdict of the jury, judgment is entered upon the said verdict of the jury, and upon the point reserved at the trial, and it is further ordered, adjudged and decreed that the said William M. Shakespear, the libellant, do recover of the said respondents and the said Andrew Scull and his sureties in the bond filed in this cause, the sum of three thousand three hundred and seventy-three dollars and one cent, with interest thereon from the twenty-third day of November, A. D. 1871, together with his reasonable costs and charges by him in and about his said suit in that behalf expended."

The respondents took a writ of error, and assigned for error :—

1. The part of the charge in brackets.

2. Refusing their 8th point.

4, 5. Not entering judgment for the respondents, and entering judgment for the libellant on the special finding.

[Scull *v.* Shakespear.]

6. Amending the special finding.

7. Entering judgment for the libellant on the plaintiffs' 6th point, which was reserved.

*J. W. Coulston*, for plaintiffs in error.—Those who contract to build a vessel for others are not owners within the Act of 1836 : Harper *v.* New Brig, Gilpin's Rep. 540 ; Smith *v.* Eastern R. R., 1 Curtis C. C. R. 260 ; Hubbell *v.* Denison, 20 Wendell 181 ; Childs *v.* The Brunette, 16 Missouri 518. The title to the schooner passed to the respondents when they took the place of Lathbury & Co. ;—the vessel was clearly ascertained and designated : 2 Kent's Com. 692 ; Hutchinson *v.* Hunter, 7 Barr 145 ; Haldeman *v.* Duncan, 1 P. F. Smith 66.

The Act of 1836 is in conflict with sect. 9th of Act of Congress of September 24th 1789, 1 Bright. U. S. Dig. 24, pl. 1, giving to the District Court of the United States exclusive cognisance of civil causes of admiralty and maritime jurisdiction : The Moses Taylor, 4 Wallace 411 ; Hine *v.* Trevor, Id. 556 ; The Belfast, 7 Id. 624 ; The Josephine, 39 New York 19 ; The General Smith, 4 Wheaton 438.

*A. M. Burton*, for defendant in error.—Statutes such as the Act of 1836 have been frequently recognised as valid : Scottin *v.* Stanley, 1 Dallas 129 ; Ship Portland *v.* Lewis, 2 S. & R. 197, 201 ; Hipple *v.* Canal Boat Fashion, 3 Grant 40 ; Steamboat Dictator *v.* Heath, 6 P. F. Smith 290. Jurisdiction in cases of contracts for the construction of vessels is exclusively in the state courts. They are not maritime contracts : People's Ferry Company *v.* Beers, 20 Howard 393 ; Roach *v.* Chapman, 22 Id. 129; The Belfast, 7 Wallace 624. The lien thus acquired is not lost by the transfer of the vessel to another owner: Davis *v.* The New Brig, Gilpin's Rep. 473, 482. For the purpose of enforcing a lien against a domestic vessel the person rightfully in possession will be deemed the owner: Weaver *v.* The Susan G. Owens, 1 Wallace, Jr., C. C. 359.

The vessel was built by William Fisher & Son, at their shipyard, and under their control, and they are to be deemed the owners: Lincoln *v.* Wright, 11 Harris 81 ; Steamboat Dictator *v.* Heath, 6 P. F. Smith 290; 3 Kent 131, 133. Until delivery, there was no change of title: Forsyth *v.* Dickson, 1 Grant 26 ; Andrews *v.* Durant, 1 Kernan (N. Y.) 35; Williams *v.* Jackman, 16 Gray 514 ; Happy *v.* Mosher, 47 Barb. (N. Y.) 501; Low *v.* Austin, 20 N. Y. (6 Smyth) 181; Nesbit *v.* Burry, 1 Casey 208 ; Thompson *v.* Franks, 1 Wright 329 ; Prichett *v.* Jones, 4 Rawle 260.

The opinion of the court was delivered, February 24th 1874, by AGNEW, C. J.—The lien given by the Act of 13th of June 1836,

[Scull v. Shakespear.]

for work done and materials furnished in the building of ships and vessels of all kinds, is expressly confined to certain classes of tradesmen and mechanics, to wit, carpenters, blacksmiths, mast-makers, boat-builders, blockmakers, ropemakers, sailmakers, riggers, joiners, carders, plumbers, painters, ship-chandlers and others named, concluding with lumber merchants. These are the individuals who actually do the work and furnish the materials for building and equipping the vessel, and evidently are not the general contractor who agrees to build the vessel for another. As to him, no lien is necessary, for he can always provide for his own security by his contract, and is not bound to deliver the vessel until paid for her, unless he choose by his agreement to do so. This is the very ground of the decision in Walker v. Anshutz, 6 W. & S. 519, a case directly in point. In the case before us, William Fisher & Son were the owners of the schooner to whom the libellant furnished the materials for her. The contract with Lathbury, Wickersham & Co. having fallen through, they were left with the unfinished hull on their hands, and in this condition they made their contract with Andrew Scull and others to build and finish the hull of a three-masted schooner, then in frame, for the sum of $18,000, payable in instalments as the work progressed, the last $2000 being payable when the schooner was finished. In no part of this contract is there any agreement to deliver her before completion, nor is such an intent discoverable. Clearly the persons thus contracting for a finished vessel were not entitled to possession until payment in full; so that title did not vest in them until the finishing of the vessel and delivery of possession. Fisher & Son were therefore the owners when Shakespear furnished the materials, for which he claimed his lien. The period of time between the abandonment of Lathbury, Wickersham & Co. and the new contract with Scull and others, was wholly immaterial in the case, for neither by the contract with Lathbury, Wickersham & Co. nor with Scull and others, did title or possession pass out of William Fisher & Son—by neither were they bound to deliver the vessel before final payment. ˙ Hence, the general finding of the jury was all that was necessary, and the special finding directed by the court was wholly immaterial, and did neither good nor harm so far as the final result was necessarily involved. The errors complained of in regard to the special verdict are therefore without injury and need no correction. William Fisher & Son being the owners of the vessel, this fact disposes of all the errors specified, except that of jurisdiction. It is contended that a lien such as this, incurred in the building of a vessel, is not within the jurisdiction of a state court, but falls within the Federal jurisdiction, under the Constitution of the United States and must be enforced in an Admiralty Court. We do not think so. A contract to build a vessel is a contract to be performed on land, falling within ordinary common

25 P. F. Smith—20

[Scull *v.* Shakespear.]

law, and belongs to the state jurisdiction. It differs not from a contract to build a wagon or a railroad car, made between citizens of the same state, and cannot be drawn into the Federal courts, because the vessel is intended to become a subject of maritime law. Whatever question may arise as to those liens, which the Act of 1836 seeks to enforce against a finished vessel, after she has entered her appropriate element, certainly there can be none as to liens upon a vessel for work and materials entering into her construction, before she has passed within the dominion of maritime law. Some dicta and District Court decisions to the contrary were overruled in People's Ferry Co. *v.* Beers, 20 Howard 393; Roach *v.* Chapman, 22 Id. 129.

Finding no error in the record, the judgment is affirmed.